## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **SAMUEL LEE CHAPMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00046 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Roger W. Rutherford, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff. Eric P. Kressman, Regional Chief Counsel, Region III, Tara A, Czekaj, Assistant Regional Counsel, Charles Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Samuel Lee Chapman filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 1381-1383f (West 2003 and Supp. 2011). Jurisdiction of this court exists under 42 U.S.C.A. § 1383(c)(3).

Chapman filed an application for benefits on January 19, 2006, claiming disability since January 11, 2006.   The claims were denied initially and on reconsideration.  A hearing was held before an Administrative Law Judge ("ALJ"). At the hearing Chapman, represented by counsel, and an independent vocational expert testified.  The ALJ denied his claim on June 22, 2007, finding that Chapman could perform a limited range of light work with certain postural and environmental limitations.  The Social Security Administration Appeals Council denied his request for review.  Chapman filed suit in this court and upon motion of the Commissioner, this court remanded the case for further development of the record and a new decision. *Chapman v. Astrue*, No. 2:08CV00040 (W.D. Va. Feb. 26, 2009).

Chapman filed an additional application for benefits on February 21, 2008, alleging disability since June 23, 2007.  On March 31, 2009, the Appeals Council consolidated the claims and remanded the case to the ALJ.  A hearing was held on the combined claims on November 3, 2009.  The ALJ issued a decision finding that Chapman retained the ability to perform a limited range of light work with postural and environmental limitations and was not disabled.  Chapman then filed his Complaint in this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is ripe for decision.

## II

Chapman was born on April 9, 1964, making him a younger individual under the regulations.   20 C.F.R. § 416.963(c) (2011).   He has an eighth grade education.   His past relevant work includes dishwasher, bus person, kitchen helper, material handler, and roofer/construction worker.   He last worked in 2004, when he quit his job because his hours were reduced.

On function forms completed with his applications, Chapman indicated that he visits with relatives once or twice a week, goes outside daily, shops for food, and does laundry.

Chapman was hospitalized on January 10, 2006, because he was coughing up blood after lifting a hot water heater.   He admitted to smoking one to two packs of cigarettes per day.   He underwent a CT scan which indicated a right upper lobe saccular bronchiectasis.   He was given an antibiotic and was asymptomatic for the rest of his hospital stay.   He was given the following diagnoses:   bronchiectasis, hemoptysis secondary to bronchiectasis, hyponatremia.   He was advised to stop smoking.

Chapman was referred to Emory H. Robinette, M.D., for follow up to his abnormal CT scan and history of hemoptysis.   Chapman admitted to smoking two packs of cigarettes per day and had smoked since age seven or eight.   Dr. Robinette observed Chapman had diminished breath sounds with bilateral sonorous rhonchi

and prolongation of the expiratory phase. Dr. Robinette's impressions were hemoptysis with evidence of saccular bronchiectasis involving the right upper lobe, chronic obstructive pulmonary disease ("COPD") with underlying centrilobular emphysema, and a history of chronic nicotine addiction. Dr. Robinette ordered a diagnostic bronchoscopy which revealed brochitic changes, erythema, old blood and copious secretions. Bronchial brushings and washings obtained did not identify any malignancies.

Chapman returned to Dr. Robinette for a follow-up in February 2006. Chapman told the doctor that he had reduced his smoking to about one pack per day. Dr. Robinette told him that he "must stop smoking because of his severe airflow obstruction and the probability of hemoptysis and potentially dying from active bleeding in his upper airway." (R. at 159.) Examination revealed diminished breath sounds with prolongation of the expiratory phase.

Three days after this appointment, Chapman went to the emergency room complaining of coughing up blood for the past three to four hours. He was diagnosed with bronchitis/bronchiectasis. He was prescribed an antibiotic and cough medicine and advised, again, to stop smoking.

In April 2006, Chapman underwent a chest X ray which revealed right upper lobe pleuroparenchymal scarring with cystic change, but was otherwise normal. He also underwent pulmonary function studies which were basically normal.

Chapman had another follow-up with Dr. Robinette in May 2006. In preparation for this follow-up, Dr. Robinette had ordered another CT scan which showed evidence of emphysematous change from the earlier scan but his bronchiectasis and chronic scarring in the right upper lobe was unchanged. Another bronchoscopy failed to show any evidence of intrabronchial lesions and bronchial washings and brushings were again negative for any malignancy. A baseline spirometry performed for Chapman's social security claim was normal. Dr. Robinette again advised Chapman that he must stop smoking.

In August 2006, Chapman went to the emergency room complaining of coughing up blood. He was again diagnosed with bronchitis/bronchiectasis and prescribed an antibiotic and cough medicine. He still reported smoking one pack of cigarettes per day and was advised to stop smoking.

Chapman underwent another chest X ray in February 2007 which showed scarring with cystic change in the right upper lobe of his lung. Lung consolidation in the right upper and lower lobes was consistent with superimposed pneumonia. On a follow-up with Dr. Robinette, Chapman admitted he was still smoking at least one pack of cigarettes per day. Dr. Robinette stated that Chapman's hemoptysis has not been severe. He again advised Chapman to stop smoking.

Chapman apparently did not seek treatment again until he presented at Twin City Medical Center in November 2008. At his initial visit, he admitted to

smoking one pack of cigarettes per day.  On examination, it was noted that he had diminished breath sounds, but no wheezing or rhonchi.

In December 2008, Chapman was examined by William Humphries, M.D., a medical consultant with the Virginia Department of Rehabilitative Services. Chapman reported that he had dyspnea at rest occasionally, but usually with mild exertion such as walking.  He told Dr. Humphries that on a good day, he could walk one-half mile without stopping.  He reported intermittent episodes of hemoptysis, including one within the last week that resolved without treatment. He admitted to smoking one pack of cigarettes per day.  Examination revealed slightly diminished breath sounds bilaterally with slight prolongation of the expiratory phase of respiration.  There were no rales, wheezes or rhonchi.  Chest X rays performed at the same time revealed chronic pleuroparenchymal scarring in the right upper lobe.  Pulmonary function studies showed probably mild obstructive lung disease, but normal diffusion capacity.  Based on his examination, Dr. Humphries diagnosed mild to moderate COPD.  He opined that Chapman could lift up to twenty-five pounds frequently and fifty pounds occasionally, and sit, stand and walk six hours out of an eight hour work day with no postural restrictions.  He did recommend that Chapman avoid fumes.

In January 2009, Chapman sought treatment at the emergency room complaining of coughing up blood for several days.  He said that he was smoking

one pack of cigarette per day.   A chest X ray showed right upper lobe consolidation, consistent with pneumonia, as well as chronic pleural and parenchymal scarring in the right upper lobe.  A CT scan showed chronic pleural and parenchymal scarring with chronic atelectasis and cicatrical bronchiectasis in the right upper lobe, a consolidation consistent with pneumonia.  There were also mild centrilobular and paraseptal emphysematous changes in the upper lobes.  He was hospitalized for two nights, treated with medications and released.  He was diagnosed with pneumonia and severe COPD.  It was specifically noted that he continued to smoke, even while hospitalized.  It was also noted that he had been treated by Dr. Robinette but had been released "assuming noncompliance" with the directive to stop smoking.  (R. at 458.)

In July 2009, Chapman returned to Twin City Medical Center for follow-up. He complained of coughing up blood and requested pain medication for the cough. He reported smoking one pack per day.  Physical exam showed diminished breath sounds with no rhonchi or wheezing.  He was not given pain medication and was again advised to stop smoking.

In May 2006, state agency physician Frank M. Johnson, M.D., reviewed the medical evidence.  He opined that Chapman retained the ability to perform work at the light level of exertion, including lifting up to twenty pounds occasionally and ten pounds frequently, standing or walking about six hours in an eight hour work

day, and sitting about six hours in an eight hour work day.   Dr. Johnson recommended restrictions to occasional postural movements.    He also recommended restrictions from environmental irritants and hazards.  In September 2006, this opinion was affirmed by Shirish Shahane, M.D., a second state agency physician.

On a date undeterminable from the record, Brian Strain, M.D., a state agency physician reviewed the record.  He opined that Chapman retained the ability to perform medium work with restrictions from concentrated exposure to environmental irritants.  In May 2009, Robert McGuffin, M.D., a state agency physician, also reviewed the record and opined that Chapman retained the ability to perform light work with restrictions from more than occasional climbing and concentrated exposure to environmental irritants.

At his first administrative hearing in May 2007, Chapman said that he coughs up blood three or four times a week but that the episodes mostly stopped on their own.  He said that he was only smoking three to four cigarettes per day.

At his second hearing in November 2009, he admitted to smoking one-half a pack of cigarettes per day.  He stated that his complaints had become more serious because he was coughing up blood every day and wheezes all the time.  He said that he could only walk about fifty yards before losing his breath.  He also said that he had to stop seeing Dr. Robinette because he could not pay.  The vocational

expert testified that a person with Chapman's background and impairments, and given the restrictions articulated by the ALJ, including restrictions on exposure to environmental irritants, could find work in several positions in the national economy.   Based upon the evidence in the record and the testimony of the vocational expert, the ALJ concluded that Chapman had the following severe impairments:   chronic pleural and parenchymal scarring with chronic atelectasis and cicatricial bronchiectasis in the right upper lobe with hemoptysis and cough, COPD, hypertension and degenerative disc disease of the cervical spine.   The ALJ found that none of these impairments met or medically equaled a listed impairment and that Chapman retained the ability to perform light work with certain restrictions and, as such, was not disabled.

Chapman argues the ALJ's decision is not supported by substantial evidence.   For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).   The standard for disability is strict.   The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process.  The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy.  *See* 20 C.F.R. § 416.920(a)(4) (2011).  If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases.  *Id*.  The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity ("RFC"), which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Substantial

evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.  *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976).  It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Chapman argues that the ALJ's decision is not supported by substantial evidence because the evidence does not support the ALJ's determination that Chapman retained the RFC to perform light work with certain restrictions. Chapman argues that the ALJ did not properly consider the effect his severe impairments, specifically his lung disease, would have on his ability to work. Chapman claims that the record shows that the severity of his episodes of coughing up blood would preclude him from work.

The evidence does not support Chapman's argument.  In determining the RFC, the ALJ properly considered whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Chapman's pain or symptoms.  *See* 20 C.F.R. § 416.929(b) (2011).  He concluded in the affirmative.  He then assessed the intensity, persistence and limiting effects of Chapman's symptoms to determine the extent to which they limit Chapman's ability to work.  *See* 20 C.F.R. § 416.929(c) (2011).   This

evaluation is not based only on the subjective statements of the claimant, but rather on the medical record as a whole, including medical opinions. *Id.* As the ALJ noted, to the extent statements about the intensity, persistence, or functionally limiting effects of his symptoms were not substantiated by the objective medical evidence, the ALJ must make a credibility determination.

The evidence as a whole does not support the conclusion that Chapman's symptoms preclude him from basic work activities. Dr. Humphries, the examining consultant, and all four of the state agency physicians concluded that he retained the capacity to perform at least light work. There are no opinions contradicting these conclusions. Although Chapman has certainly had to seek emergency treatment for his coughing spells at times, his overall course of treatment has been relatively conservative. In addition, his pulmonary function tests were generally normal and examinations revealed only mild respiratory abnormalities.

The ALJ also concluded that Chapman's statements about his limitation were not credible. Credibility is within the purview of the ALJ. *See Seacrist*, 538 F.2d at 1056-57. As the ALJ noted, many of Chapman's statements during his hearing were undermined by the record. For example, although he testified at his hearing that he could only walk fifty yards before getting out of breath, he told Dr. Humphries that he could walk one-half mile. Also, although he claimed trouble with standing and walking, he did not have an assistive device. Again, his

-12-

pulmonary function tests were basically normal, as was his breathing during examinations by his treatment providers. And finally, although he claims such severe breathing and coughing trouble, he continues to smoke at least one-half pack of cigarettes per day, an environmental hazard if there ever was one. The evidence supports the ALJ's conclusion that Chapman's statements as to symptoms were not credible.

The ALJ relied upon the opinions of Dr. Humphries and Dr. McGuffin, and the evidence as a whole, in formulating the RFC, and took into account the limitations articulated by those physicians when taking testimony from the vocational expert. The ALJ properly gave little weight to Chapman's statements regarding his symptoms. Even if Chapman's statements regarding the frequency with which he coughs up blood were given credit, the vocational expert testified that such symptoms would only preclude him from jobs involving public contact and that several jobs he identified did require public contact. The evidence supports the ALJ's determination of his RFC.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A

final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   February 22, 2012

/s/  James P. Jones
United States District Judge